*The opinion of the Court, except the Chief Jus- [ * 187 ] tice, who did not sit in the cause, was afterwards delivered by
Sedgwick, J.
[After a brief recital of the facts.] On these facts there are three questions presented to the consideration of the Court.
1. Did not the notice, which was given by Mr. Blake, the attorney of the district, on the 4th of September, 1802 (being previous to any of the custom-house bonds being paid, or having become due), did not this notice to Mr. Paine, as assignee of the defendant, and requesting payment of the bond, on which this action is brought, so attach the right of the United States to the money in Mr. Paine’s hands, that it could not be divested afterwards by any payment of other bonds due to the United States 1
2. As the plaintiff did not pay the money punctually upon the bond, in which he was surety for- Smith; nor until other bonds made *142 and payable afterwards, had been paid by the other sureties, Paine and Hall; has he by that delay, under the circumstances of this case, lost the benefit, otherwise intended him by the statute, of having vested in him, upon his payment of the bond, the right of the United States to priority and preference ?
3. Supposing the plaintiff by law entitled to recover, is this the proper form of action ?
By the answer which we find ourselves bound to give to the last of these questions, it is unnecessary to resolve the two former. Being of opinion that this is not the proper form of action, whatever the right of the plaintiff may be, we seem to be precluded from considering the merits of the case, which, by a mistake in bringing the action, are really not before us.
We have suggested the first question, which was not noticed at the bar, because it seems to us worthy of consideration; and because we are informed by Mr. Paine’s answers, that his [*188] co-surety, Hall, has brought an action, *for his part of the money paid on Smith’s bonds, against Paine as assignee. *■
To determine whether Mr. Paine would, under any circumstances, be responsible to - the plaintiff, upon the process used in this action, as the trustee, because he is the assignee of the bankrupt, it will be necessary to consider the statute of this commonwealth, and that of the United States, so far as they respect the subject before us.
The act commonly called the trustee act,' on which this process is brought, was made for the express purpose of enabling “ creditors to receive their just demands out of the goods, effects and credits of their debtors, when the same cannot be attached by the ordinary process of law.” The preamble recites that “ whereas the goods, effects and credits of persons are oftentimes so intrusted and deposited in the hands of others, that the same cannot be attached by the ordinary process of law, to satisfy such judgments as may be recovered against such persons.” The act authorizes “ all his goods, effects and credits so intrusted or deposited to be attached.” The process prescribed, to give the remedy intended, directs the person, with whom the goods, effects and credits of the debtor have been so intrusted or deposited, to show cause why execution should not issue against the goods, effects and credits of the debtor in his hands. And the substance of the answer of the person summoned is, whether he has in his possession the goods, effects or credits of the debtor.
It appears then, that the goods, effects and credits, which by this process are to be attached to satisfy the demands of the creditor, eve the goods, effects and credits .of the debtor. Indeed, from the *143 nature of the subject it would seem that they could be the goods, effects and credits of no one else. Now, it is very evident that Mr. Paine had in his hands no goods, effects or credits * of the debtor, the principal defendant in this action. [ * 189 ] For, by the bankruptcy of the defendant, he ceased to have any property in what were before his goods, effects and credits ; and by the assignment of the commissioners to Mr. Paine, those goods, effects and credits, by retrospection, from the moment they, by the act of bankruptcy, ceased to belong to the defendant, became his ; and this by a title no way connected with, bút adverse to the defendant. As they were manifestly in truth not the goods, effects or credits of Smith, they ought not to be so considered, unless a fiction to that purpose is indispensable to attain the end of substantial justice. This will depend on the true construction of the act of congress, to regulate the collection of duties on imports and tonnage.
The 65th section of that act directs that bonds given to secure the collection of duties shall, immediately after having become due, be put in suit. It then provides for priority of satisfaction in cases of insolvency; and then that any executor, administrator or assignees, or other persons, who shall pay any debt for the person or estate, for whom or which they are acting, previous to the debt due to the United States, from such person or estate, being first paid, shall become answerable in their own person or estate for the debts due to the United States; and that actions may be commenced against them for the recovery thereof. There is then a proviso, that in all cases where actions are commenced for the recovery of duties or pecuniary penalties by the laws of the United States, the person against whom process may be issued, may be held to special bail, subject to the rules which prevail in other suits.
It does seem to me that when the act provides for the priority and preference to the United States, in cases of insolvency, it imposes a duty on those, in whose hands the funds may be, which are required to satisfy the preference which is secured, to apply them accordingly; *and reasoning from analogy, it would [*190] seem that suits ought to be instituted whenever any executor, administrator or assignee shall fail to fulfil his obligation. It seems difficult to conceive, upon any principle of reason, why, when any person has money in his hands in any capacity, which belongs to another, and he refuses to pay it over, and a suit becomes necessary to compel him to perform his duty, that the suit should not be commenced against him in the character in which he holds the money. If the United States should claim the money in the hands of Mr. Paine, and were entitled to recover it, it would be because he *144 nod received it as the assignee of Smith, and had improperly neglected to pay it where it was due. And if this be an instance, it is a singular one, in which an action may not be supported against an assignee of a bankrupt, where he shall refuse the performance of a civil duty, to the injury of another.
It is important to ascertain what would be the remedy, if the United States were parties. Because the next proviso of the same section of the act gives to the surety of an insolvent principal, on his payment of a bond given for duties, “ the like advantage, priority or preference for the recovery and receipt of the said moneys out of the estate and effects of such insolvent, as are reserved and secured to the United States, and authorizes him to bring and maintain a suit or suits upon the bond or bonds, in law or equity,” in his own name, for the recovery of all moneys paid thereon. And it declares that the cases of insolvency included in that section, shall include the case of a debtor voluntarily assigning his property, that of a concealed or absconding debtor, and that of a legal bankruptcy.
That it was not the intention of congress to give only the remedy that has been attempted in this case, is very certain from this consideration, that it is a process which is confined to a [ * 191 ] very small part of the United States; and * therefore, if relied upon alone, the intentions of the act could not be carried into effect.
But it may be said that it is a remedy concurrent with one directly against the assignee. It seems to me impossible to suppose that congress should consider the same person, in relation to the same property, indifferently, as the assignee holding the property adversely to the bankrupt, and as a trustee holding it under and for him.
It was asked, how is to be the judgment, and how is it to be executed ? I answer, not definitively, but I hope satisfactorily, that the judgment, in form and substance, must be the same as other judgments against assignees as such, and executed in the same manner.
That case of Champnis vs. Lisle & al., Assignees, cited at the bar, does not show that this sort of action may not be supported, any further than as it is evidence that an action may be supported directly against the assignee; nor does this appear from the case any further than that there was no objection made on that account. But it can hardly be supposed that none would have been made, if the counsel had supposed the objection to have been plausible. And I think it impossible that the same person should be both assignee ana trustee of a bankrupt, in relation to the same property.

Trustee discharged.